IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONALD JAMES | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | NO. 07-2162 |
| | : | |
| LOUIS FOLINO, ET AL. | : | |

### MEMORANDUM

**SURRICK, J.**                                                                                             **AUGUST  25  , 2015**

      Presently before the Court are Ronald James's *pro se* Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Pet., ECF No. 1), the Report and Recommendation of Magistrate Judge David R. Strawbridge (R&R, ECF No. 14), and Petitioner's Objections to the Report and Recommendation (Objections, ECF No. 20). For the following reasons, the Objections will be overruled and the Petition will be denied.[1]

### I.      FACTUAL BACKGROUND

      James's current incarceration is the result of a series of crimes committed between July 10, 1994, and July 13, 1994. The Pennsylvania Superior Court summarized the factual background of those crimes in its Memorandum Opinion denying James's direct appeal:

> On July 10, 1994, at approximately 2:15 pm, appellant and an accomplice entered a Foot Locker shoe store. After requesting assistance from a sales person, appellant followed him into the storeroom, aimed a sawed-off shotgun at him, and demanded sneakers and money from the cash register. Since the sales clerk did not have the keys for the register, appellant fled with six pairs of sneakers. Approximately four hours later appellant and his accomplice entered the Supercade Arcade, forced two clerks into the back room pointing a sawed-off shotgun at them, and forced them to open the safe. Appellant concealed bags of

---

[1] James is a *pro se* litigant, and so we construe his pleadings liberally. *United States v. Miller*, 197 F.3d 644, 648 (3d Cir. 1999).

quarters in a Foot Locker shoe store bag, took money from one of the clerks, and fled.

The following day, July 11, 1994, at approximately 12:30 p.m., appellant and his accomplice entered the Samsun shoe store, requested assistance from a sales clerk, pointed a sawed-off shotgun at the clerk and cashier, and fled with sneakers and cash from the register.  Appellant was observed by police approximately seven hours later driving an automobile through a stop sign, and speeding down the road while swerving from side to side.  Police officers pursued appellant for ten to fifteen blocks while appellant sped through traffic lights in an attempt to elude them.  Appellant eventually crashed the automobile and fled on foot carrying a sawed-off shotgun.  Police apprehended appellant, and appellant was identified by employees of Foot Locker and the Supercade Arcade as one of the two men who robbed them.  The arresting officer testified that appellant had a bloodshot eye, and was wearing clothing identical to that described by the sales clerks.

Appellant was arrested and placed in jail.  On July 13, 1994, appellant placed pieces of a sandwich into the lock fixture of his open cell door to prevent it from closing properly, and later fled the jail on foot.  Appellant ran down the street to an automobile the owner had left running, and appellant sped the vehicle in reverse attempting to evade police.  Appellant was apprehended at the scene.

The sales clerk from the Foot Locker testified that one of the robbers had a bloodshot eye, and was wearing a white T-shirt and light-colored shorts.  This clerk identified appellant from a photo array.  The assistant manager of the Supercade Arcade testified that one of the individuals had a bloodshot eye, and was wearing a white T-shirt and light-colored shorts.  The assistant manager also identified appellant from a photo array.

*Commonwealth v. James*, No. 4890 Phila. 1997, slip op. at 1-3 (Pa. Super. Ct. Aug. 3, 2000)

("*James I*") (citations omitted).  (Commw. Resp. Ex. A, ECF No. 13.)

## II.   PROCEDURAL BACKGROUND

On January 8, 1997, a jury in the Court of Common Pleas of Philadelphia County found James guilty of the following crimes:  five counts of robbery;[2] four counts of possessing an

---

[2] We note that the Superior Court Opinion on direct appeal stated that James was convicted of four counts of robbery. *James I* at 3.  In fact, he was convicted and sentenced for five robberies.  (May 21, 1997 Sentencing Tr. 40-41 (on file with the Court.) There were three robberies involving five victims, total.  (*Id.*)

2

instrument of a crime and carrying a prohibited offensive weapon ("PIC"); three counts of criminal conspiracy; and single counts of simple assault, attempted theft, receiving stolen property, and escape. *James I* at 3. (May 21, 1997 Sentencing Tr. 40-44.[3]) He was sentenced to incarceration for not less than ten years nor more than twenty years for each of the first two robbery counts, and not less than five years nor more than ten years for each of the other three robbery counts. The robbery sentences were all designated to run consecutively to each other. (May 21 Sentencing Tr. 40-41.) He was also sentenced to two-and-one-half to five years on each PIC count, and two-and-one-half to five years on the escape count, all of which were to run consecutive to each other but concurrent to the robbery sentences. (*Id.* at 41-43.) The sentences on the attempted theft, simple assault, and receiving stolen property counts were suspended. (*Id.* at 43-44.) The aggregate term of incarceration was 35-70 years. (*Id.* at 44.)

James appealed his conviction and sentence. The Pennsylvania Superior Court affirmed on August 3, 2000. *James I*. The Pennsylvania Supreme Court denied *allocatur* on April 2, 2001. *Commonwealth v. James*, 781 A.2d 140 (Pa. 2001).

On April 12, 2002, Petitioner filed a *pro se* petition for relief under the Post-Conviction Relief Act, 42 Pa. Cons. Stat. Ann. §§ 9541-46 ("PCRA"). (Pet. 5-6; R&R 2 & n.3.) Counsel was appointed. Petitioner's appointed counsel filed a "no-merit" letter with respect to his petition (Jan. 10, 2003 Letter from J. Vinci), and it appears that new counsel was appointed (Pet. 11). The Court of Common Pleas dismissed the petition on May 7, 2003. (Pet. 6.) The Pennsylvania Superior Court affirmed the dismissal in part, but remanded one claim of ineffective assistance of counsel. *Commonwealth v. James*, No. 1649 EDA 2003, slip op. (Pa. Super. Ct. Aug. 31, 2004) ("*James II*"). On remand, the Court of Common Pleas dismissed the

---

[3] The sentencing and trial transcripts to which we refer throughout this Memorandum are part of the record and on file with the Court.

remaining claim. (Pet. 6.) That ruling was affirmed by the Superior Court on November 21, 2006. *Commonwealth v. James*, No. 85 EDA 2006, slip op. (Pa. Super. Ct. Nov. 21, 2006). The Pennsylvania Supreme Court denied *allocatur* on April 26, 2007. *Commonwealth v. James*, 921 A.2d 495 (Pa. 2007).

On May 18, 2007, James filed this Petition pursuant to 28 U.S.C. § 2254. (Pet.; R&R 3 n.4.) The Petition was referred to United States Magistrate Judge David R. Strawbridge for a Report and Recommendation. (ECF No. 2.) In November of 2007, after two extensions of time, James filed a memorandum of law in support of his Petition. (Pet'r's Mem., ECF No. 10.) On February 1, 2008, the Philadelphia District Attorney's Office filed an answer. (Commw. Resp.) Thereafter Magistrate Judge Strawbridge filed a Report and Recommendation, concluding that the Petition should be denied and dismissed, and that a certificate of appealability should not issue. (R&R.) Petitioner filed Objections to the R&R. (Objections.)[4]

## III.   LEGAL STANDARD

This habeas petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). If a state court adjudicates an issue on the merits, AEDPA limits a federal habeas court's review of that issue. In such a case, a federal court may grant habeas relief only if the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

---

[4] We review *de novo* those portions of the R&R to which specific objections have been made. 28 U.S.C. § 636(b)(1)(B); *Cont'l Cas. Co. v. Dominick D'Andrea, Inc.*, 150 F.3d 245, 250 (3d Cir. 1998).

A state court's decision is "contrary to" clearly established federal law if the state court applied a rule that contradicted the governing law set forth in Supreme Court cases, or if the state court confronted facts that were materially indistinguishable from a relevant Supreme Court precedent, yet the state court arrived at the opposite result.  *Bell v. Cone*, 543 U.S. 447, 452-53 (2005).  A state court decision involves an "unreasonable application" of clearly established federal law if the state court properly recognized Supreme Court precedent, but applied it in an "objectively unreasonable" fashion to the facts at hand.  *Williams v. Taylor*, 529 U.S. 362, 409, 413 (2000); *see also Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 891 (3d Cir. 1999).  To justify habeas relief, it is not enough that the state court simply "applied clearly established federal law erroneously or incorrectly."  *Williams*, 529 U.S. at 411.  Issuance of the writ is warranted only where the state court decision is objectively unreasonable.  *Id.*

## IV.  DISCUSSION

James advances a number of arguments in support of his Petition.  Initially we will address the timeliness of the Petition.

### A.  Timeliness

Section 2254 petitions are subject to a one-year statute of limitations.  Under § 2244(d)(1), that one-year clock starts to run from the latest of the following dates:

> (1) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (2) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (3) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

5

(4) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Section 2244(d)(2) does provide a tolling exception for PCRA actions: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."

A conviction becomes final for § 2254 purposes when the period for filing a timely petition for certiorari expires. *Kapral v. United States*, 166 F.3d 565, 577 (3d Cir. 1999). The Supreme Court of Pennsylvania denied *allocatur* on James's direct appeal on April 2, 2001. *See Commonwealth v. James*, 781 A.2d 140 (Pa. 2001). The period for filing a timely petition for certiorari expired 90 days later, on July 2, 2001. *See Kapral*, 166 F.3d at 577; Sup. Ct. R. 13. Under § 2244(d)(1), James had until July 2, 2002 to submit his petition for a writ of habeas corpus.

On April 12, 2002, James filed a PCRA petition in the state court, at which point 284 days had elapsed in the one-year period for filing a habeas petition. The filing of James's PCRA petition stopped the clock — *see* § 2244(d)(2) — and it did not restart until the Pennsylvania Supreme Court denied *allocatur* on his PCRA appeal on April 26, 2007. *See James*, 921 A.2d 495. James then had 81 days left — or until July 16, 2007 — to file his petition for a writ of habeas corpus.[5] James filed the instant Petition on May 18, 2007. The Petition, as it was filed on that date, is therefore timely.

B.   **Speedy Trial**

---

[5] The period for filing a timely petition for certiorari review of a PCRA petition does *not* toll the AEDPA limitations period. *See Lawrence v. Florida*, 549 U.S. 327, 330-36 (2007).

Addressing next James's claim that trial counsel was ineffective for failing to move for dismissal of James's charges based upon a violation of Pennsylvania's speedy trial rule (Pet'r's Mem. 1, 7), this claim was not part of James's petition as it was filed on May 18, 2007. In fact, James never mentioned a speedy trial issue until September 2007, when he requested additional time to file a memorandum of law. (Appl. for Leave to Supplement § 2254 Pet., ECF No. 8.) He expanded upon the claim when he filed the Memorandum in November 2007. (Pet'r's Mem. 7-15.) The Commonwealth contends that this claim is untimely because it was raised after the limitations period expired. (Commw. Resp. 4.) Petitioner counters that he was explicitly granted leave to supplement his Petition with a new issue, that he is *pro se* and his pleadings must be construed liberally, and that any untimeliness should be excused. (Objections 2.)

There is no question that the speedy trial issue — mentioned for the first time in September 2007 — was raised after the limitations period expired in July 2007. It is therefore untimely and precluded unless: (1) it relates back to the original petition; or (2) it qualifies for equitable tolling. *See Pirela v. Vaughn*, No. 01-4017, 2014 WL 1199345, at *41 (E.D. Pa. Mar. 24, 2014).

Generally speaking, an amendment of a pleading relates back to the date of the original pleading when the claim asserted in that amendment "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. P. 15(c)(2).[6] In the habeas context, the Supreme Court has made it clear that not all arguments raised in an amendment will automatically relate back to the original petition simply because

---

[6] The Federal Rules of Civil Procedure apply to habeas corpus proceedings "to the extent that the practice in such proceedings is not set forth in statutes of the United States [or] the Rules governing Section 2254 cases . . . [,] and has heretofore conformed to the practice in civil actions." Fed. R. Civ. P. 81(a)(2).

7

they arose out of the same trial and conviction.  *Mayle v. Felix*, 545 U.S. 644 (2005).[7]  Moreover, they will not automatically relate back merely because they rest on the same alleged constitutional violation, such as ineffective assistance of counsel.  *See, e.g.*, *United States v. Gonzalez*, 592 F.3d 675, 679-80 (5th Cir. 2009); *Duffus*, 174 F.3d at 335-338.  An amendment will relate back only if it "does not seek to add a new claim or to insert a new theory in the case," but rather simply "clarifies or amplifies a claim or theory" set out in the original, timely-filed petition.  *United States v. Thomas*, 221 F.3d 430, 431 (3d Cir. 2000).

James's Petition, as it was filed in May 2007, set forth the following claims:  (1) ineffective assistance of counsel for not attacking the trial court's failure to explain its departure from the Sentencing Guidelines; (2) ineffective assistance of trial counsel for failing to move for severance of the charges; (3) ineffective assistance of trial counsel for failing to object to an incomplete *Kloiber* instruction to the jury;[8] (4) ineffective assistance of trial counsel for failing to withdraw from the case; and (5) trial court error for failing to appoint new counsel.  (Pet. 11-12.)  It is apparent that the speedy trial issue does not clarify or amplify any of these claims.  It is a new claim unto itself.  It therefore does not relate back to the original, timely-filed pleading.  *See Duffus*, 174 F.3d at 334-38; *Abu-Jamal v. Horn*, No. 99-5089, 2001 WL 1609761, at *4, 6 (E.D. Pa. Dec. 18, 2001); *cf. Hodge v. United States*, 554 F.3d 372, 374-78 (3d Cir. 2009)

---

[7] Strictly construing the relation-back provision is necessary in the habeas context, to avoid providing an end-run around the one-year limit Congress very consciously imposed:

> Congress enacted AEDPA to advance the finality of criminal convictions . . . If claims asserted after the one-year period could be revived simply because they relate to the same trial, conviction, or sentence as a timely filed claim, AEDPA's limitation period would have slim significance.

*Mayle*, 545 U.S. at 662; *see also United States v. Duffus*, 174 F.3d 333, 337-38 (3d Cir. 1999).

[8] *See* Section IV.E., *infra*.

(holding that claim that counsel was ineffective for failing to file notice of appeal did relate back to the petitioner's right-to-appeal claim, which was timely filed).[9]

Considering whether equitable tolling can save the untimely-filed speedy trial claim, the AEDPA limitations period can be tolled for equitable reasons, under certain circumstances. *Holland v. Florida*, 560 U.S. 631, 645 (2010).  To qualify for equitable tolling, a petitioner must show both that he pursued his rights diligently, and that some extraordinary circumstance prevented his ability to file in a timely manner.  *Id.* at 649.  Here, James has not shown an extraordinary circumstance.  He states that he did not raise the speedy trial claim in his original filing because the prisoner who initially advised him simply did not include it; upon departure of that prisoner, James secured a second prisoner-advisor who recommended advancing a speedy trial claim.  (Appl. for Leave to Supplement § 2254 Pet.)  However, "attorney error, miscalculation, inadequate research or other mistakes" are not extraordinary circumstances that warrant equitable tolling.  *Fahy v. Horn*, 240 F.3d 239, 244 (3d Cir. 2001), *cert. denied*, 534 U.S.

---

[9] James attempts to distinguish his case from *Mayle* (*see* note 5, *supra*) by arguing that he had been explicitly granted leave to supplement his petition with a new issue, while the defendant in *Mayle* had attempted to introduce a new issue in response to an order to supplement existing claims.  (Objections 2.)  But the question before the Supreme Court in *Mayle* was not whether the district court had received sufficient notice regarding the defendant's intent to introduce a new issue; it was whether the defendant's untimely amendment could "relate back" to other timely claims simply because it arose from the same criminal trial.  545 U.S. at 653.  The holding of *Mayle* makes clear that it cannot.

Equally unpersuasive is James's passing argument that the Commonwealth "consciously waived" its right to object to his untimely amendment by not objecting to his initial request to amend.  (Objections 2.)  The proper time to raise such an objection is in the answer to a pleading.  Fed. R. Civ. P. 8(c).  The Commonwealth properly objected.  (Commw. Resp. 4.)

944 (2001); *see also Brown v. Shannon*, 322 F.3d 768, 773-74 (3d Cir. 2003).[10] Clearly James's speedy trial claim is untimely. Accordingly, it must be precluded.

      **C.**      **Excessive Sentence**

James advances several arguments with respect to his sentence. First, he argues that the sentence the trial court imposed is excessive and violates the Eighth Amendment. (Pet. 9.)[11] Second, he argues that the sentencing court improperly departed from the Sentencing Guidelines without stating its reasons for doing so. (Pet. 9.) And third, he argues that all of his attorneys were ineffective for failing to preserve his excessive sentence claim for appellate review. (Pet'r's Mem. i, 15.)

The Magistrate Judge concluded that the first two arguments were procedurally defaulted because James's federal sentencing claims had not been properly presented to the state courts. The Magistrate Judge reasoned that while James did challenge his sentence as excessive on direct appeal,[12] he did not put the state court on notice of a federal claim. (R&R 17-19.) It is a fundamental precept of habeas jurisprudence that claims asserted in § 2254 petitions must first

---

[10] In his Objections to the R&R, James fervently argues that the Court should exercise its discretion to disregard the claim's untimeliness because James is proceeding *pro se*. It is true that we construe *pro se* filings liberally. *See* note 1, *supra*. But even under the most liberal construction, we could not conclude that the speedy trial claim is a mere clarification of James's timely-filed claims, rather than an entirely new claim. *See, e.g.*, *Duffus*, 174 F.3d at 334, 337-38; *Maldonado v. Coleman*, No. 09-1697, 2011 WL 1234994, at *3-4 (E.D. Pa. Mar. 31, 2011).

[11] Although James mentions that his allegedly excessive sentence denied him "due process and equal protection of the law" under the United States Constitution (Pet'r's Mem. 16), he does not describe how his excessive sentence claim sounds in either federal equal protection or federal due process, nor is it apparent to us how it could. We therefore do not address it. *See Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3d Cir. 1991), *cert. denied*, 502 U.S. 902 (1991) (denying habeas relief on the basis of "vague and conclusory allegations").

[12] As the R&R notes, the Superior Court determined that any sentencing issue was waived because it had not been preserved in post-trial motions. *James I* at 23-24; (R&R 18 n.11.)

have been presented to the state courts.  If a petitioner has not given the state courts a "full opportunity to resolve any constitutional issues" related to the claim, the claim is procedurally defaulted and therefore precluded, absent a showing of cause and prejudice or a fundamental miscarriage of justice.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848 (1999).

A review of the issues set forth in James's direct appeal reveals that no federal claim was presented to the state court on the excessive sentence question.  Instead, what James challenged on direct appeal was "[w]hether the sentencing court, in imposing a sentence of 35 to 70 years [of] imprisonment, unreasonably and excessively departed [from] the sentencing guidelines, and did so without stating the reasons for the departure[.]"  *James I* at 6.  He also argues that his trial and appellate counsel were ineffective for failing to preserve his federal sentencing claim.  While ineffective assistance of counsel can provide the cause necessary to excuse a procedural default — *see Edwards v. Carpenter*, 529 U.S. 446, 453 (2000); *Martinez v. Ryan*, 566 U.S. ___, 132 S. Ct. 1309, 1315 (2012) — it can do so only if the underlying sentencing claims have merit.  *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999); *see also Martinez*, 132 S. Ct. at 1318.  Here, they do not.

To the extent that James protests the failure of the sentencing court to adhere to the Pennsylvania Sentencing Guidelines, such a claim is not cognizable in this forum.  The United States Supreme Court has emphasized that habeas relief does not lie for errors of state law: "[W]e reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Instead, habeas review is "limited to deciding whether a conviction violated the Constitution, laws, or treaties *of the United States*."  *Id.* at 68 (emphasis added); *see also* 28 U.S.C. § 2254(a).

The same is true of James's second sentencing claim. The rule that Pennsylvania state courts departing from the state Sentencing Guidelines must declare their reasons for doing so is a product of Pennsylvania caselaw and the state Sentencing Code. *See Commonwealth v. Royer*, 476 A.2d 453, 458 (Pa. Super. Ct. 1984). Once again, a state court's misapplication of its own law does not raise a cognizable claim in a habeas proceeding. *Zettlemoyer*, 923 F.2d at 309; *see also Taylor v. Horn*, 504 F.3d 416, 448 (3d Cir. 2007). "The federal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Geschwendt v. Ryan*, 967 F.2d 877, 889 (3d Cir. 1992); *see also Estelle*, 502 U.S. at 67-68.

In light of that maxim, the issue we may consider is whether the sentence that the state court imposed on James violates the Eighth Amendment. The Eighth Amendment does not require strict proportionality between crime and sentence in non-capital cases. Rather, it "forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring). Relevant Supreme Court cases set the contours of the term "grossly disproportionate" with respect to an individual petitioner's non-capital sentence.

In *Solem v. Helm*, the Supreme Court invalidated a sentence of life imprisonment, without the possibility of parole, which was imposed on a petitioner for the crime of uttering a "no account" check in the amount of $100. 463 U.S. 277, 303 (1983). In striking down the sentence, the Court considered the fact that Helm's previous offenses were nonviolent and relatively minor; that the crime of passing a bad $100 check was also nonviolent and minor; and that the sentence he was given would place him in jail for the rest of his life with no possibility of parole. *Id.* at 296-303.

Cases decided before and after *Solem* paint *Solem* as an outlier. In *Harmelin*, the Supreme Court rejected the "gross disproportionality" challenge to a life sentence, without the possibility of parole, imposed for the crime of possessing 672 grams of cocaine. 501 U.S. at 997-1005. The petitioner had no prior felony convictions. *Id.* at 994.[13] In *Rummel v. Estelle*, the Court upheld a life sentence, without the possibility of parole, imposed on a recidivist[14] for obtaining $120.75 by false pretenses. 445 U.S. 263, 266, 285 (1980). And in *Hutto v. Davis*, the Court upheld a sentence of 40 years of imprisonment that was imposed on a petitioner for possession and distribution of nine ounces of marijuana. 454 U.S. 370, 370-75 (1982) (per curiam). The petitioner had previously been convicted of selling LSD. *Id.* at 380 n.10 (Powell, J., concurring).

In this case, James was convicted of robbing five people at gunpoint over the space of two days. According to the sentencing transcript, there was evidence that he committed two more armed robberies: one on July 7, three days before the first robbery for which he was

---

[13] We note that the Supreme Court decided two other gross disproportionality cases after *Harmelin*, both in 2003: *Ewing v. California*, 538 U.S. 11, 29-30 (2003) (upholding a sentence of 25 years-to-life-imprisonment imposed on a recidivist for stealing three golf clubs); and *Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (upholding two consecutive sentences of 25 years-to-life-imprisonment imposed on a recidivist for shoplifting four videotapes from one store, and five videotapes from another). For the purposes of our analysis under AEDPA, we must determine what law was "clearly established" at the time of the state court's decision. *See Greene v. Fisher*, 132 S. Ct. 38, 44 (2011) ("[Section] 2254(d)(1) requires courts to focus on what a state court knew and did, and to measure state-court decisions against this Court's precedents *as of the time the state court renders its decision*.") (internal quotation marks omitted) (emphasis in original). We therefore consider only the Supreme Court decisions that had been handed down by May 1997, when James was sentenced.

[14] The defendant's previous two felonies were for: (1) fraudulent use of a credit card to obtain $80 worth of goods and services; and (2) passing a forged check in the amount of $28.36. *Rummel*, 445 U.S. at 1134-35.

convicted, and another on July 11, four hours after the last robbery for which he was convicted.[15] James was 26 years old when he committed these crimes.[16] However, these crimes were not his first offenses. The record indicates that he was continuously incarcerated for most of his adult life, from age 18 to age 25. It also suggests that he had been a juvenile offender as well. (May 21 Sentencing Tr. 9, 19, 28-29.)

On habeas review, the question for this Court is not whether we would have imposed as harsh a sentence on Petitioner as did the state court. Rather, the question is whether the sentence that the state court imposed on him was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d). At the time of James's sentencing, Supreme Court precedent demonstrated that harsher sentences, imposed for more benign crimes than Petitioner's, and imposed on offenders with more benign records than Petitioner's, were not grossly disproportionate. *See* discussions of *Rummel*, *Davis*, and *Harmelin*, *supra*. That precedent also made clear that "successful challenges to the proportionality of particular sentences [were] exceedingly rare." *Rummel*, 445 U.S. at 272. In fact, the only petition that had been successful up to that point — Solem's — was antithetical to James's in the most critical way: the Court emphasized that Solem's crime was passive and nonviolent, while James's multiple armed robberies could hardly be so described. *Cf. Solem*, 463 U.S. at 296 (emphasizing that the crime at issue was "one of the most passive felonies a person could commit"); *see also Harmelin*, 501 U.S. 957, 1001-1005 (contrasting the nonviolent crime in *Solem* with the more serious crimes in *Rummel*, *Davis*, and *Harmelin*).

---

[15] James was arrested for these crimes, but the cases did not come to fruition because the witnesses did not appear at the preliminary hearing. (May 21 Sentencing Tr. 8-9.)

[16] According to the record, James was born in January 1968.

Given Supreme Court precedent at the time of James's sentencing, and given the circumstances of his particular case, we cannot conclude that the sentence James received violates clearly established federal law. James's excessive sentencing claims and his related ineffective assistance claim are, therefore, without merit.

### D. Ineffective Assistance of Counsel for Failing to Move for Severance

James argues that his trial counsel was ineffective for failing to request a severance of the charges relating to the car theft, the robberies, and the escape. (Pet'r's Mem. 22.)

A claim for ineffective assistance of counsel has merit only if the petitioner can show prejudice. *Strickland v. Washington*, 466 U.S. 668, 694 (1994). In this context, prejudice is defined as a reasonable probability that the outcome of the proceeding would have been different but for counsel's alleged error. *Id.* We agree with the Magistrate Judge's conclusion that James cannot show prejudice, because the state court held on direct appeal that severance was not warranted under the circumstances — *see James I* at 19-20 — and trial counsel cannot be ineffective for failing to advance a meritless claim. *Sanders*, 165 F.3d at 253.[17] This claim therefore fails.

### E. Ineffective Assistance of Counsel for Failing to Object to Jury Instructions

James argues that trial counsel was ineffective for failing to object to what he considers was an incomplete and erroneous jury charge, with respect to one witness's identification testimony, under *Commonwealth v. Kloiber*, 106 A.2d 820 (Pa. 1954). This claim was raised on

---

[17] In his Objections, James complains that the Magistrate Judge did not address whether trial counsel was ineffective for failing to move for severance of the car theft and escape charges specifically. (Objections 9.) On direct appeal, the state court was presented with the question of whether severance was warranted under state law. The state court determined that it was not. State court determinations of state law questions are not within our scope of review. *Estelle*, 502 U.S. at 67. To the extent that the particular nuance James suggests here was not put before the state court, it is procedurally defaulted. *See O'Sullivan*, 526 U.S. at 845, 848.

direct appeal and the Superior Court rejected the claim, concluding that James had failed to establish that he was prejudiced by "any failure of the trial court to give the entire *Kloiber* charge." *James I* at 15-16. Whether the charge that was given complied with *Kloiber*, and whether a *Kloiber* charge was even warranted, is not for us to determine. As noted above, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67-68; *see also Green v. Folino*, No. 03-674, 2010 WL 4343625, at *9 (E.D. Pa. Nov. 3, 2010). Here, we may only consider whether trial counsel's performance violated the Sixth Amendment. To demonstrate ineffective assistance of counsel under *Strickland*, James must show: (1) that counsel's representation "fell below an objective standard of reasonableness," according counsel a high degree of deference; and (2) prejudice, defined as a reasonable probability that the outcome of the proceeding would have been different but for counsel's alleged error. 466 U.S. at 688-89, 694.

      We need not consider the reasonableness element, because James has not shown the requisite prejudice to succeed on this claim. The record reveals the overwhelming evidence against James that was presented at trial, including, but not limited to: the fact that two other witnesses positively identified him as the assailant, both at the preliminary hearing and at trial; the fact that James was apprehended while carrying a sawed-off shotgun, which is the same kind of weapon that had been used in all the robberies; the fact that James attempted to escape from custody after being picked up on these charges; and the fact that surveillance videotape of the robbery introduced at trial supported the conviction. *James I* at 13 n.5, 15. Given this body of evidence, James has not shown any reasonable probability that the outcome of the proceeding would have been different had the full *Kloiber* instruction been given. *See Strickland*, 466 U.S. at 691.

16

### F.     Ineffective Assistance of Counsel for Failing to Withdraw and Trial Court Error for Failing to Remove Counsel

Finally, James argues that he and his trial counsel experienced a complete breakdown in their relationship, after which his counsel should have withdrawn.  By not doing so, James contends, his counsel was ineffective, and by failing to order such a withdrawal, the trial court erred.  (Pet'r's Mem. 29-34.)  The Superior Court rejected these claims on direct appeal, concluding that James had failed to prove that continued representation by his trial counsel had prejudiced him, and that the trial court's denial of Petitioner's *pro se* motion to remove counsel precluded a finding that counsel was ineffective in not seeking withdrawal.  *James I* at 18.

In his Memorandum, James supports these claims entirely with Pennsylvania caselaw, with only a single, passing citation to *United States v. Cronic*, 466 U.S. 648, 656 (1984).  (Pet'r's Mem. 34.)   We reiterate that state court determinations of state law questions are not within our scope of review.  *Estelle*, 502 U.S. at 67.  Here, we may consider whether the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.  *See* 28 U.S.C. § 2254(d)(1).  Neither counsel's failure to withdraw, nor the trial court's failure to order such a withdrawal, was contrary to federal law.

The record indicates that when James's trial proceedings began, James addressed the court and expressed dissatisfaction with his attorney.  He stated that in his view, his lawyer believed he was guilty; that on the rare occasion that he saw his lawyer, the lawyer simply pushed an unwanted deal on him; and that overall, they had "no relationship."  (Jan. 2, 1997 Trial Tr., Vol. I, 4-10.)  The trial court denied James's request for appointment of new counsel.  (*Id.*)  Shortly thereafter, James's attorney asked to confer with the trial court at sidebar.  In chambers, the attorney described to the court how James had just threatened him:

17

> As the jury was coming into the room, Mr. James leaned over to me and told me I'd better watch myself, I'd better keep my head up throughout this trial, I'd better duck, you know, he's making threats to me, and the thing is, Your Honor, I don't really have fear of anyone, I'll clean this guy's clock in two seconds. I'm not worrying about that, but if I get sucker-punched in front of the jury, I'm not going to be able to control myself in front of this guy.

(*Id.* at 10.)

It is clear from these excerpts that the relationship between James and his trial counsel was strained, at least at that particular point in time. However, a "meaningful relationship" between defendant and counsel is not what the Sixth Amendment guarantees. *Morris v. Slappy*, 461 U.S. 1, 13-14 (1983). As the Supreme Court explained in *Cronic* (the only federal case James cites), the right to effective assistance of counsel is really "the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing." 466 U.S. at 656. Put another way, the focus of a Sixth Amendment inquiry is on the *adversarial process*, not on the accused's relationship with his lawyer per se. *Id.* at 657 n.21; *see also Wheat v. United States*, 486 U.S. 153, 159 (1988); *Strickland*, 466 U.S. at 686 ("The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.").

We see no evidence of a breakdown in the adversarial process here. The record reflects that counsel put on a vigorous defense that included pertinent objections, salient cross-examination of the Commonwealth's witnesses, and motions to suppress the sawed-off shotgun and all witness identifications. (Jan. 6, 1997 Trial Tr. 6-42.) The record also indicates that whatever communication issues James and his counsel faced were not permanent. During the colloquy regarding his decision not to testify, James stated that he had discussed the issue thoroughly with his attorney before concluding he would not take the stand. (Jan. 8, 1997 Trial

Tr., Vol. V, 9-10.)  And lastly, we agree with the Superior Court that the conversation in chambers between counsel and the trial court does not support an ineffective assistance claim. *James I* at 17-18.  Rather, it demonstrates the attorney's concern that James might prejudice himself in front of the jury.  *Id.*  The fact that counsel prioritized his client's best interests over his own safety indicates especially effective assistance.

The trial court acted within its discretion when, as the trial began, it denied James's request for new counsel.  *See Wheat*, 486 U.S. at 164.  That decision did not violate clearly established federal law, as determined by the United States Supreme Court in *Morris*, *Cronic*, and *Wheat*.  James's claim that the trial court erred in this regard therefore fails.  *See* 28 U.S.C. § 2254(d)(1).

The related claim of ineffective assistance is similarly meritless.  James himself asked that his attorney be replaced.  The trial court rejected his request.  James's counsel was not ineffective for declining to repeat a request that the court had already denied.  *See Sanders*, 165 F.3d at 253 ("There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument.").

## V.     CERTIFICATE OF APPEALABILITY

To qualify for a certificate of appealability ("COA"), a habeas litigant must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  When a habeas petition is denied on procedural grounds without reaching the merits of the underlying constitutional claim, a COA can only issue if a habeas litigant also shows that reasonable jurists would find it debatable whether the district court was correct in its procedural ruling.  *Id.*  Since no reasonable

jurist could disagree with either the procedural ruling at bar or with the conclusion that James's Petition lacks merit, no certificate of appealability can issue.

## VI. CONCLUSION

For the foregoing reasons, James's *pro se* Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 is denied and no certificate of appealability will issue.

An appropriate Order follows.

                                          **BY THE COURT:**

                                          _____
                                          **R. BARCLAY SURRICK, J.**